# Union Central Relief Ass'n. *v.* Johnson.

### Assumpsit.

(Decided November 16, 1916.   Rehearing denied January 18, 1917.
73 South. 816.)

1. **Insurance; Policy; Construction.**—In view of its object to give insurance, an insurance contract, if of doubtful import, is construed in favor of the insured; it is not construed unreasonably so as to cut out insurance.

2. **Same.**—Where there is no ambiguity in the contract there is no room for construction and the language of the contract will be expounded by the courts as used by the parties.

3. **Same.**—In construing a clause of an accident or sick benefit policy the whole policy must be considered in order to give effect, if possible to the language used and to each provision and exception therein.

4. **Same; Payment Arrearage.**—A clause in a policy forfeiting sick benefits of a member owing more than two weekly payments for a period continuing between the date of his becoming so in arrears and the expiration of a term of five weeks from the date when all back dues were paid, did not prevent recovery by a member who had become more than two weeks in arrears but who had made payment from time to time and had paid up all back dues before he became sick.

APPEAL from Birmingham City Court.
Heard before Hon. H. A. SHARPE.

Action by Ben. J. Johnson against the Union Central Relief Association upon a sick benefit policy. Judgment for plaintiff and defendant appeals. Affirmed.

Transferred from the Court of Appeals under Acts 1911, p. 449.

ALLEN, FISK & TOWNSEND, for appellant. ISADORE SHAPIRQ, for appellee.

THOMAS, J.—Plaintiff (appellee) sued upon a contract of insurance which provided for the payment of a certain indemnity in the event of disability from illness and accident, and for the payment of a principal sum in the event of death. The trial was had by the court without a jury on an agreed statement of facts.

Counsel frankly state that the real question presented for decision is the proper construction of section 9 of the policy. It is as follows:

"If a member owes more than two weekly payments, such member shall thereby forfeit his or her right to receive benefits for sickness or disability occurring or continuing between the date of becoming so in arrears and the expiration of a term of five weeks from the date when all back dues are paid up."

In the context in which this section appears are sections 8 and 10, reading as follows:

"(8) Should the payment of weekly dues upon this policy be due four Mondays or longer, this policy shall be void and all payments made hereunder shall be forfeited; but should sickness of said member occur while this policy is in arrears more than two Mondays, and should death of said member occur while this policy is in arrears more than three Mondays, said member shall be out of benefits and the association shall be freed from all liabilities hereunder."

"(10) Members out of benefit, as per clause 8, may be revived upon payment of back dues in full (and the fact that the policy has been revived shall be indorsed on the policy by either the president or secretary of the company); but the member will not be entitled to any benefits under this policy unless in sound health and free from any disease at the time of such reinstatement, and in case death or sickness should occur from any cause whatever within five weeks from the date of such reinstatement, the association shall not be liable to any extent whatever on ac-

count of such death or sickness, nor for sickness or accident having had its beginning during said five weeks, or from death that results from such sickness or accident, and members will not be allowed to pay back dues when sick."

It is admitted that the plaintiff failed to pay the weekly installments due, respectively, April 5, April 12, and April 19, 1915; that on April 23, 1915, the plaintiff made the payments becoming due on April 5th and April 12th preceding, and on May 1, 1915, made the payments due on April 19th and April 26th preceding, and on May 7, 1915, made the payment due on May 3d preceding, and on May 14, 1915, made the payment due on May 10th preceding, and on May 17, 1915, made the payment due on that date. The plaintiff was disabled on account of sickness from May 10 to May 24, 1915; and for this disability brought this suit "to obtain the disability benefits" provided in the contract. What, then, was the effect of the foregoing failures to pay the installment premiums when they fell due, and of their subsequent payment and acceptance, as we have indicated?

(1) It is the policy of this state to construe every insurance contract, if of doubtful import, in favor of the insured. The contract must, of course, be reasonably construed, in view of the object of the certificate, which is to give insurance, and not unreasonably, so as to cut out insurance.—*James v. Casualty Co.*, 113 Mo. App. 622, 88 S. W. 125; *Foglesong v. Modern Brotherhood of America*, 121 Mo. App. 548, 97 S. W. 240; *Batten v. Modern Woodmen*, 131 Mo. App. 381, 111 S. W. 513; *National, etc., Insurance Co. v. Lokey*, 166 Ala. 174, 52 South. 45.

(2) However, if there is no ambiguity, there is no field for construction. This statement of the rule finds expression in *Cornish v. Accident Ins. Co.*, 23 Q. B. D. 453, where the Lord Justice said:

"In a case of real doubt, the policy ought to be construed most strongly against the insurers; they frame the policy and insert the exceptions. But this principle ought only to be applied for the purpose of removing doubt, not for the purpose of creating a doubt, or magnifying an ambiguity, where the circumstances of the case raise no real difficulty."

Another statement is found in *Wheeler v. Fidelity, etc., Co.*, 12 Ga. 237, 58 S. E. 709, Mr. Justice COBB writing: "While we recognize the rule that a policy of insurance must be construed most strongly against the insurer, still the words of the policy

must be given the meaning which they ordinarily bear; and where it is manifest that it was the intention of the insurer that liability should attach only in given circumstances, the law will uphold the contract according to its true intent and import."

(3) Thus in construing a policy of accident or sick benefit insurance the whole policy, or the context of the questioned clause, must be considered, in order, if possible, to give effect to the language used, to give it that reasonable interpretation to which it is entitled, and to avoid giving it a meaning not fairly within the terms of the instrument. Where the language is unambiguous, and but one reasonable construction of the contract is possible, the court must expound it as it is made by the parties.— *Standard L., etc., Ins. Co. v. McNulty,* 157 Fed. 224, 85 C. C. A. 22; *Maryland Cas. Co. v. Chew,* 92 Ark. 276, 122 S. W. 642; *Kelsey v. Cent. Cas. Co.,* 131 Iowa 207, 108 N. W. 221, 8 L. R. A. (N. S.) 1014; *Bader v. New Amsterdam Co.,* 102 Minn. 186, 112 N. W. 1065, 120 Am. St. Rep. 613; *Penn v. Standard L. Ins. Co.,* 160 N. C. 399, 76 S. E. 262, 42 L. R. A. (N. S.) 597; *Wadsworth v. Canada R. Ins. Co.,* 28 Ont. L. 537. In short, operation, effect, and meaning should be given to each clause, sentence, and word of the contract; and, in the absence of anything showing a contrary intention, the plain, ordinary, and popular meaning given to the terms used.—*Nelson v. Traders,* 181 N. Y. 472, 74 N. E. 421; *Dunning v. Massachusetts,* 99 Me. 390, 59 Atl. 535; *White v. Standard Life Ins. Co.,* 95 Minn. 77, 103 N. W. 735, 884, 5 Ann. Cas. 83; *Merrill v. Travelers' Co.,* 91 Wis. 329, 64 N. W. 1039. And at the same time if possible, its legal effect should be given to each provision or exception.—*Currie v. Cont. Cas. Co.,* 147 Iowa 281, 126 N. W. 164, 140 Am. St. Rep. 300; *Young v. Travelers' Co.,* 80 Me. 244, 13 Atl. 896; *Furry v. Gen. Acc. Ins. Co.,* 80 Vt. 526, 68 Atl. 655, 15 L. R. A. (N. S.) 206, 130 Am. St. Rep. 1012, 13 Ann. Cas. 515; *Johnston v. Dominion Co.,* 17 Ont. L. 462.

(4) Applying these well-known principles of construction to the contract of insurance and the agreed statement of facts before us, the judgment of the trial court was correct. From April 19 to April 23d the assured was in default as to three weekly payments. Section 9 of the policy provides, however, that a member is not in such default as to "forfeit his or her right to receive benefits for sickness or disability occurring or continuing," etc., until such member owe more than two weekly pay-

[Union Central Relief Ass'n. v. Johnson.]

ments. On April 23, 1915, the assured paid the two overdue installments of April 5th and April 12th, and thereupon and thereafter there was no default, such as provided for in section 9, until April 26th, which only continued to May 1, 1915, when the overdue "weekly payments" of April 19th and April 26th were paid. The subsequent weekly payments of May 3, May 10, and May 17 were respectively discharged by the insured on May 7, May 15, and May 17, 1915. The weekly payment maturing on May 17, 1915 (during the period of the assured's disability), was met by him on the date of its maturity.

It is to be observed that the condition precedent to forfeiture of his sick benefits was that assured should fail to pay "more than two weekly payments;" that the express condition of default was that he should "owe more than two weekly installments," and not that he should owe two installments for more than two weeks. If the assured should be in default, he should have no right to recover for sick benefits for the period fixed. This period was stipulated to be the time "between the date of becoming so in arrears [May 1, 1915] and the expiration of a term of five weeks from the date when all back dues are paid up [May 7, 1915]."

Thus the period for which no recovery may be had of sick benefits on account of sickness or disability "occurring or continuing" in this case was that from April 2 to May 1, 1915. And no claim is here made for such benefits for a period anterior to and including May 10th.

This construction of section 9 is not impinged upon by sections 8 and 10. In the former the provision for a complete forfeiture is found; and in the latter the provision for the reinstatement of a member "out of benefit."

Under the express terms of this contract of insurance the defendant undertook to reinsure the plaintiff against just such a contingency as that for which he makes claim, and during the time indicated, to-wit, from May 10 to May 24, inclusive, 1915.

Let the judgment be affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.